## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Robert THOMAS | ) | 3:21-CV-00211 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VIGILANT INSURANCE COMPANY, | ) | |
| d/b/a CHUBB | ) | MARCH 22, 2022 |
| *Defendant*. | ) | |

## <u>MEMORANDUM OF DECISION</u>
## RE: MOTION TO DISMISS, ECF NO. 26

Kari A. Dooley, United States District Judge:

This lawsuit arises out a denial of coverage under Plaintiff Robert Thomas' homeowner's insurance policy issued by Defendant Vigilant Insurance Company, d/b/a/ Chubb (hereinafter "Chubb" or Defendant) following an incident by which Plaintiff's home suffered significant water damage. Plaintiff brings a breach of contract claim for the denial of coverage and a tort claim that the Defendant violated its duty to deal with the Plaintiff in good faith (Counts One and Two). In addition, Plaintiff asserts five additional causes of action: breach of the contractual covenant of good faith and fair dealing (Count Three), innocent misrepresentation (Count Four), negligent misrepresentation (Count Five), a violation of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA") (Count Six), and a second CUIPA/CUTPA violation (Count Seven).

Pending before the Court is Defendant's motion to dismiss Counts Three through Seven. of the Amended Complaint. For the reasons set forth below, the motion is GRANTED.

**Legal Standard**

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Allegations**

The Court accepts as true the allegations in the Amended Complaint which are as follows. At relevant times, the Plaintiff owned a residence located at 60 Clark Hill Road, East Haddam, Connecticut. (Am Compl. ¶ 1, ECF No. 15.) On May 11, 2019, in consideration for the premium it charged, the Defendant issued the Plaintiff a homeowner's insurance policy, known as the "Masterpiece Homeowners Insurance Deluxe House Coverage" policy (the "Masterpiece Policy") and bearing policy number 1120067401. (*Id.* ¶ 5.)

On or about April 13, 2020, while the Masterpiece Policy was in effect, the Plaintiff suffered water damage to the insured property at 60 Clark Hill Road. (*Id.* ¶ 6.) The Masterpiece Policy covered damage caused by water or water-borne material which backs up or escapes from within interior plumbing or sewers. (*Id.* ¶ 7.) The Plaintiff promptly notified the Defendant of the damage and loss of use of the property, and the Plaintiff fulfilled the terms and conditions of the Masterpiece Policy. (*Id.* ¶¶ 9–10.)

On or about April 15, 2020, the Defendant's agent Jeff Crane called the Plaintiff and left a message acknowledging the Plaintiff's notification of the claim. (*Id.* ¶ 17.) Christopher Howley, another of the Defendant's agents, inspected the property concerning the loss on or about April 17, 2020. (*Id.* ¶ 18.) Upon receiving Howley's report, the Defendant did not approve the Plaintiff's claim. (*Id.*) On May 1, 2020 the claim was reassigned to Jon Dickenson. (*Id.* ¶ 19.) Chubb hired C.A. Pretzer Associates, Inc. ("Pretzer") ostensibly to investigate the claim. (*Id.* ¶ 11.) Pretzer assigned David Grandpre to investigate the claim. (*Id.* ¶ 20.) On or about June 2, 2020, Pretzer issued a report to Chubb concluding that the water causing the damage entered the east and west basements as a result of a backup in the drainpipes located within the footprint of the east and west wings. (*See id.* ¶¶ 12, 21.)

This report was a sham designed in bad faith to manufacture reasons to deny coverage. (*Id.* ¶ 22.) It ignored the observations of Christopher Howley and the geographical and architectural features of the house and surrounding property. (*Id.*) Further the report also defied accepted, general scientific and engineering principles and standards, and the report was "speculative and unfounded." (*Id.* ¶¶ 22, 25.) Neither Chubb nor Grandpre disclosed that David Grandpre was not an independent engineer but was instead an expert witness often retained by Chubb in connection with homeowner's insurance claims. (*Id.* ¶ 23.)

On or about June 15, 2020, Jon Dickenson left the Plaintiff a message stating that the Defendant was still investigating the claim. (*Id.* ¶ 26.) Jon Dickenson called again the following day and indicated that the Defendant wanted to excavate the property to further investigate and determine the cause of the damage to make a call on coverage. (*Id.* ¶ 27.) The excavation would allow the Defendant to insert a camera into the drainpipe and determine the source of the blockage. (*Id.*) A written inquiry followed that same day. (*Id.* ¶ 28.) The Plaintiff questioned the need for this

further investigation insofar as the finding that the water emanated from the drainage system within the dwelling established coverage under the policy. (*Id.* ¶ 30.) On June 25, 2020, the Plaintiff's agent indicated that the Plaintiff would allow this excavation to occur on the condition that the Defendant indemnify the Plaintiff for any damage resulting from the additional excavation. (*Id.* ¶ 31.) The Defendant refused Plaintiff's request and withdrew its request for additional investigation. (*Id.*)

On or about October 20, 2020, the Defendant wrote to the Plaintiff informing him that the Defendant would not cover the water damage to the 60 Clark Hill Road Property. (*Id.* ¶ 32.)

The Defendant did not, during this time or at any time within 180 days of the damage, attempt to mitigate the water damage emanating from within the home. (*Id.* ¶ 11.) Additional allegations shall be set forth as necessary.

**Discussion**

This case is principally a coverage dispute. Although Plaintiff brings multiple claims, each derives from the denial of coverage which forms the basis of the breach of contract claim and which the Defendant does not challenge. Nor does the Defendant challenge the second count, which alleges tortious bad faith. Rather the Defendant challenges the counts that are peripheral to the core dispute between the parties and argues that those counts are either inapplicable as a matter of law or insufficiently plead. The Court agrees.

***Count Three (Breach of the Covenant of Good Faith and Fair Dealing)***

In both Count Two and Count Three, Plaintiff alleges bad faith on the part of the Defendant in handling his claim. The Defendant moves to dismiss Count Three as duplicative of Count Two, asserting that "these two counts ultimately involve the same legal cause of action, and, indeed, the same underlying factual allegations." (Def.'s Mem. 10, ECF No. 27.) Plaintiff responds that the

bad faith claim sounding in tort is distinct from the contract-based breach of the implied covenant of good faith and fair dealing claim. While the Court agrees in principle with the Plaintiff, under the circumstances of this case, the claims are wholly duplicative.

"Connecticut 'recognizes a common-law duty of good faith and fair dealing between an insurer and its insured,'" and this common-law duty gives rise to a cause of action sounding in tort. *See Nationwide Mut. Ins. Co. v. Pasiaki*, No. X08FSTCV094015401, 2011 WL 6413817, at *3 (Conn. Super. Ct. Nov. 30, 2011). Connecticut law also implies into every contract a covenant of good faith and fair dealing. *See, e.g., Macomber v. Travelers Property & Cas. Corp.*, 261 Conn. 620, 638 (2002). This, of course, includes contracts for insurance. *See, e.g., Heyse v. Case*, 114 Conn. App. 640, 652–53 (2009). Along those lines, the Connecticut Supreme Court "has tended to use the terms 'bad faith,' 'lack of good faith' and 'breach of the covenant of good faith and fair dealing' interchangeably . . . and [it] applies the same analysis to claims brought under each of these terms." *Capstone Bldg. Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 794 n.34 (2013) (quoting *PSE Consulting, Inc. v. Frank Mercede & Sons, Inc.*, 267 Conn. 279, 296 n.7 (2004) and citing *Buckman v. People Express, Inc.*, 205 Conn. 166, 170 (1987)) (internal quotations omitted). And while there may be circumstances where a breach of the implied covenant of good faith and fair dealing is distinct from a tortious bad faith claim, Connecticut courts have oft held that these causes of action are duplicative where they are based on the same underlying insurance contract. *See Arch Ins. Co. v. Centerplan Constr. Co., LLC*, No. 3:16-CV-01891 (VLB), 2018 Wl 6519063, at *16–*17 (D. Conn. Dec. 11, 2018) (discussing *Nationwide Mut. Ins. Co. v. Pasiak*, No. X08FSTCV094015401, 2011 WL 6413817 (Conn. Super. Ct. Nov. 30, 2011). *See also Votre v. County Obstetrics and Gynecology Group, P.C.*, 113 Conn. App. 569, 580 (2009)

(noting that, for a complaint sounding in both contract and tort, "[i]t is not the label that the plaintiff placed on each count of her complaint that is pivotal but the nature of the legal inquiry").

Here, the Court agrees with Defendants that the breach of the implied covenant of the good faith and fair dealing claim is duplicative of the tortious bad faith claim. As a factual matter, both the Count Two and Three of the Amended Complaint rely on the same allegations which are founded on the same insurance contract dispute. Count Two, sounding in bad faith, specifically incorporates paragraphs 1–16 of the Amended Complaint, which form the basis of Plaintiff's breach of contract claim. In turn, Count Three of the Amended Complaint, which asserts a breach of the implied covenant of good faith and fair dealing, incorporates paragraphs 1–37, which form the basis of **both** the breach of contract claim and the claim of tortious bad faith. The allegations in Count Three do not identify, as a factual matter, any additional conduct on the part of the Defendant which violated the covenant of good faith but did not amount to tortious bad faith. Thus, both Counts Two and Three are "based on the same facts, which relate to disputes involving the contract[] at issue in this case." *Arch Ins. Co.*, 2018 Wl 6519063, at \*17; *see also Bilyard v. Am. Bankers Ins. Co. of Fla.*, No. 3:20CV1059 (JBA), 2021 WL 4291173, at \*6 (D. Conn. Sept. 21, 2021) ("Plaintiff's allegations of bad faith and breach of the implied covenant of good faith and fair dealing both stem from a series of actions Plaintiff contends Defendant took with respect to its insurance policy."). Indeed, the allegations in Count Three are largely a recitation of the elements of the cause of action. Plaintiff offers no recent authority to support the proposition that these causes of action are separate and distinct under the circumstances presented here. And while the case principally relied upon, *Buckman v. People Express, Inc.*, 205 Conn. 166, 170 (1987), identified "an independent cause of action in tort" when an insurer does not deal with his insured in good faith, the Connecticut Supreme Court has also recognized *Buckman* as standing for the

proposition that a tortious bad faith claim and a claim for a breach of the implied covenant of good faith and fair dealing can be subject to the same analysis. *See Capstone Bldg. Corp.*, 308 Conn. at 794 n.34.

Plaintiff's assertion that he has a right to plead in the alternative is correct. But a plaintiff who seeks to exercise that right must actually plead in the alternative, and the second and third counts here are one and the same—as a matter of fact and as a matter of law. Count Three of the Amended Complaint asserting a breach of the implied covenant of good faith and fair dealing is dismissed as duplicative of Count Two.

### *Count Four (Innocent Misrepresentation) & Count Five (Negligent Misrepresentation)*

Counts Four and Five contain additional allegations concerning representations that Chubb made both prior to the issuance of Plaintiff's insurance policy and after the loss occurred at Plaintiff's home. The counts allege that through various vehicles, including through the use of agents, brochures, television, digital and print media, and testimonials, Chubb cultivated a deceptive and misleading image to induce consumers to purchase insurance through Chubb, purportedly a "premium insurer that specializes in serving successful families and individuals with more to insure." (Am. Comp. ¶ 40.) The counts further allege:

> 41. Among Chubb's statements and representations of fact to plaintiff were the following:
>
>> a. That the Masterpiece Policy, was designed to provide first class or masterpiece property and casualty insurance to high wealth individuals such as plaintiff; and
>>
>> b. That under the Masterpiece Policy, Chubb would provide better and greater coverage to plaintiff than other insurers; and
>>
>> c. That under the Masterpiece Policy, Chubb would not simply process plaintiff's claims; and

d. That under the Masterpiece Policy, Chubb would go out of its way to make the claim process easy for plaintiff, if something happens to the covered home; and

e. That under the Masterpiece Policy, Chubb would treat plaintiff as a client and not a claimant; and

f. That under the Masterpiece Policy, Chubb would look for ways to say yes to the claim rather than for ways to simply deny the claim; and

g. That under the Masterpiece Policy, when plaintiff experience a claim, Chubb would make sure that plaintiff would be made whole again quickly; and

h. That under the Masterpiece Policy, Chubb would always look to do more for the plaintiff when he suffered a loss; and

i. That under the Masterpiece Policy, Chubb would provide comprehensive protection to suit plaintiff's unique needs; and

j. That under the Masterpiece Policy, Chubb would raise plaintiff's expectations of "what insurers can deliver"; and

k. That under the Masterpiece Policy, when plaintiff was at his worst, Chubb would be at its best, always treating plaintiff with empathy; and

l. That under the Masterpiece Policy, Chubb would cover water that backed up and/or escaped from interior plumbing sewer and drains; and

m. That under the Masterpiece Policy, Chubb would provide fast claim service; and

n. That Grandpre's investigation was conducted in order to determine the plaintiff's damages; and

o. That Grandpre was an independent "engineer" hired to inspect the plaintiff's covered loss; and

p. That Grandpre would not speculate; and

q. That Grandpre's investigation would be conducted fairly and objectively; and

8

r. That Chubb required further investigation to determine coverage.

Based upon these allegations Plaintiff brings claims of innocent and negligent misrepresentation in Counts Four and Five, respectively.[1] To establish a claim of innocent misrepresentation, a plaintiff must plausibly allege: (1) a representation of material fact, (2) made for the purpose of inducing the purchase, (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation by the defendant and (5) damages. *Little Mountains Enterprises, Inc. v. Groom*, 141 Conn. App. 804, 810 n.4 (2013) (quotations omitted). In order to establish a claim of negligent misrepresentation, meanwhile, a plaintiff must plausibly allege: "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result." *Coppola Const. Co., Inc. v. Hoffman Enterprises Ltd. Partnership*, 309 Conn. 342, 351–52 (2013) (quotations omitted). A tortfeasor need not have acted with the purpose of inducing the plaintiff to act: Negligent misrepresentation is not an intentional tort. *See Sturm v. Harb Development, LLC*, 298 Conn. 124, 142 (2010). Nevertheless, a plaintiff must prove that he suffered his loss as a result of the alleged misrepresentations as opposed to some other cause. *See Glazer v. Dress Barn, Inc.*, 274 Conn. 33, 77–78 (2005).

The Defendant's motion to dismiss challenges the factual sufficiency of the allegations and, in so doing, the Defendant addresses separately the alleged misrepresentations which occurred prior to the date of loss—April 13, 2020—and those that occurred after the date of loss. The Defendant challenges the "pre-loss" statements, paragraphs 41(a)–(m) as detailed above, as

---

[1] The Plaintiff numbered, but did not name, these counts, and the Defendant initially identified these causes of action as ones for fraudulent or intentional misrepresentation. (Def.'s Mem. 13.) While this was not an unreasonable assessment of the allegations, the Court accepts Plaintiff's clarification as to the intended causes of action contained in Counts Four and Five. (*See* Pl.'s Opp. Mem. 8, ECF No. 28.)

statements constituting nothing more than marketing statements or puffery that are not actionable under Connecticut law. As to the "post-loss" statements in paragraphs 41(n)–(r) above, the Defendant asserts that Plaintiff fails to allege that they either induced the Plaintiff to take some action or that they were relied on by the Plaintiff to his detriment. Plaintiff responds that the pre-loss statements are actionable under Connecticut law and that he has adequately alleged inducement by and reliance on the post-loss statements. Plaintiff also asserts that the Court, were it to agree with Defendant concerning either the pre-loss or post-loss statements, cannot dismiss a portion of either the fourth or fifth count.[2]

**Pre-Loss Statements**

The Defendant asserts that these statements concern Defendant's marketing strategy and are therefore not actionable under Connecticut law. Defendant argues, in other words, that the pre-loss statements at issue in the Amended Complaint are mere "puffing" and cannot form the grounds for a misrepresentation claim. *See Gold v. Univ. of Bridgeport School of Law*, 19 Conn. App. 379, 384–85 (1989) (citing *Web Press Services Corp. v. New London Motors, Inc.*, 205 Conn. 479, 483 (1987)); *see also Loubier v. Allstate Ins. Co.*, No. 3:09-cv-261 (JBA), 2010 WL 1279082, at *5 (D. Conn. Mar. 30, 2010) (holding that Allstate's slogan—that its policyholders "are in Good Hands[TM] with Allstate"—was vague and devoid of meaning upon which plaintiff could have reasonably relied or proven false). In response, Plaintiff asserts that he relied on more than mere slogans and marketing materials, and he points to the statements contained in paragraph 41 of the Amended Complaint to illustrate this point.[3]

---

[2] The parties also dispute whether Fed. R. Civ. P. 9(b) applies to these claims. For the reasons set forth below, the Court need not take up that question.

[3] Although all of the authority that Defendant cites indicates that puffery cannot support a claim for fraudulent misrepresentation, Plaintiff does not argue that an innocent or negligent misrepresentation claim may be based on statements that would otherwise be considered puffery. Rather, he argues that his allegations are not puffery.

Puffs, or puffery, are those favorable comments by sellers with respect to their products, and such comments are universally accepted and expected in the marketplace. *Gold*, 19 Conn. App. at 384–85 (quoting *Web Press Services Corp.*, 205 Conn. at 483); *see also Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007) (explaining that puffery may come in two forms: (1) "a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion" and (2) "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying"). Several factors may indicate whether a statement constitutes puffery, such as "vagueness," "subjectivity," and an "inability to influence the buyers' expectations." *See Avola v. Louisiana-Pacific Corp.*, 991 F. Supp. 2d 381, 392 (E.D.N.Y. 2013).

Paragraph 41 lists eighteen of Defendant's alleged misrepresentations, and paragraphs 41(a) to 41(m) cover pre-loss statements.[4] Notwithstanding Plaintiff's position to the contrary, these pre-loss statements are mere puffery. As discussed above, for example, paragraph 41(a) states "[t]hat the Masterpiece Policy, was designed to provide first class or masterpiece property and casualty insurance to high wealth individuals such as plaintiff," and paragraph 41(b) states "[t]hat under the Masterpiece Policy, Chubb would provide better and greater coverage to plaintiff than other insurers." These types of broad, subjective statements are exactly the type that sellers in the marketplace are expected to use: They are general claims of superiority that are so vague so as to be a mere expression of an opinion. They are not, in other words, statements of fact or concrete promises of future action that were specific to the relationship between the parties. *See*

---

[4] The Plaintiff indicates that Defendant made these statements in a variety of contexts, including in a brochure, television advertisements, digital and print media, testimonials, and through its agents. (Am. Comp. ¶¶ 38–40, 43.) Although context is important in determining the effect of any particular advertisement or statement on a consumer, s*ee Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019), Plaintiff is nonspecific about which of these pre-loss statements were made in which context.

*DeBlasio v. Merrill Lynch & Co., Inc.*, No. 07 Civ 318(RJS), 2009 WL 2242605, at \*23–24 (S.D.N.Y. July 27, 2009). Similar reasoning applies to other statements in paragraph 41, such as the statement "[t]hat under the Masterpiece Policy, Chubb would treat plaintiff as a client and not a claimant." (Am. Compl. ¶ 41(e).) This alleged statement is vague, subjective, and devoid of any concrete meaning which is susceptible to being proven false. *See Anthem Sports, LLC v. Under the Weather, LLC*, 320 F. Supp. 3d 399, 415 (D. Conn. 2018).

The one possible exception is paragraph 41(*l*), which states "[t]hat under the Masterpiece Policy, Chubb **would** cover water that backed up and/or escaped from interior plumbing sewer and drains." (Emphasis added.) While this statement can be read to have a concrete meaning susceptible to being proven false, the statement, and any dispute about it, also mirrors the coverage dispute detailed in Count One.[5] And to the extent the Plaintiff relies upon statements other than those contained in the insurance policy itself (in some unspecified form or context) a reasonable consumer would not expect that an insurance company "would cover" water damage in all circumstances as the scope of coverage is always determined by the language specific to the policy being procured. *See Bowman v. Hartig*, 334 F. Supp. 1323, 1328 (S.D.N.Y. 1971) (finding no fraud where "the customer was told that the broker's primary purpose was to make profits for the customer" because such statements constituted "nothing more than the common puff of a salesman and must be looked at from the point of view of a reasonable person."); *see also Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918) (Hand, J.) ("There are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity.").[6]

---

[5] Indeed, to the extent that the Plaintiff relies upon the language of the policy in support of this negligent misrepresentation claim, the claim is duplicative of Count One and is subject to dismissal on those grounds.

[6] Judge Hand also explained that the relation between the parties matters in determining whether puffery can be the basis of an action for deceit and that a seller possessing special knowledge of his wares may have a greater responsibility to be forthright with a potential buyer. *See Vulcan Metals Co.*, 248 F. at 856. While the Court recognizes that the insurance industry is regulated, in part, to protect consumers who may not be in a position to fully appreciate all of the limitations to coverage in an insurance policy, such protection only goes so far. *See Loubier*, 2010 WL

Accordingly, none of the pre-loss statements identified in Counts Four and Five support a cause of action for either innocent or negligent misrepresentation.

**Post-Loss Statements**

As discussed above, the post-lost statements at issue are found in paragraphs 41(n)–(r) of the Amended Complaint. These statements occurred in the context of the Defendant's and Grandpre's investigation of Plaintiff's claim. Defendant argues that Plaintiff has not alleged either inducement or reliance. Plaintiff responds by pointing to paragraphs 12 and 35(m) and invites the Court to draw an inference that Plaintiff was induced to wait patiently for his claim to be adjusted, as a result of which Plaintiff incurred more damage while the investigation dragged on. Paragraph 12, located in Count One but incorporated by reference into Counts Four and Five, alleges that on June 2, 2020, Pretzer completed his report and that at no point "over the 180 day period" did Defendant mitigate the water damage emanating from within the home, instead leaving Plaintiff to remove the water and damaged personal property from his own home. Paragraph 35(m), located in Count Two and also incorporated by reference into Counts Four and Five, alleges that "the defendant has acted in bad faith in at least one or more of the following ways . . . Intentionally delaying the resolution of the plaintiff's claim while it knew that the damage he suffered would worsen if not timely mitigated and failing to take any steps to mitigate the same."

As to the innocent misrepresentation claim, the Court agrees with the Defendant. As required to state a claim for innocent misrepresentation, *see Little Mountains Enterprises, Inc.*, 141 Conn. App. at 810 n.4, Plaintiff does not plausibly allege that the statements in paragraphs 41(n)–(r) were made for the purpose of inducing any action in the post-loss context, let alone a

1279082, at *5 (holding that an insurance company's slogan could not be reasonably relied upon by consumer and citing cases holding similarly).

purchase.[7] Contrary to the theories expressed in Plaintiff's opposition memorandum and at oral arguments, Paragraphs 42 and 43 unequivocally allege that the statements in the preceding paragraphs were made to induce the Plaintiff to purchase the Masterpiece Policy.[8] Plaintiff's attempt to recast his allegations to support an inference that the statements in paragraphs 41(n)–(r) were made with the purpose of inducing Plaintiff to wait patiently is not a reasonable inference to be drawn from these allegations. Nor is the conclusory allegation at paragraph 48 that the Plaintiff "justifiably relied on said statements" provide adequate factual support for this claim.

As to the negligent misrepresentation claim, the Court again agrees with the Defendant that the Plaintiff has failed to state a claim. Here, Plaintiff conceded at oral argument that the Amended Complaint did not adequately allege reliance on the post-loss statements. This concession alone is fatal to a negligent misrepresentation claim premised on the post-loss statements. For this reason, and those discussed above regarding the pre-loss statements and the viability of the innocent misrepresentation claim, Count Four and Count Five are dismissed.[9]

Nevertheless, Plaintiff argues in his opposition memorandum that had Defendant not made the alleged post loss misrepresentations, then Plaintiff would not have waited to repair his basement and potentially could have better mitigated his damages. (Pl.'s Opp. Mem. 21–22, ECF No. 28.) Therefore, the dismissal of Counts Four and Five is without prejudice. If the Plaintiff

[7] "[I]n Connecticut, the tort of innocent misrepresentation generally is governed by § 552C of the Restatement (Second), which requires 'a sale, rental or exchange transaction with another' before liability attaches." *Farrell v. Johnson and Johnson*, 335 Conn. 398, 419 (2020) (quoting the Restatement (Second) of Torts § 552C) (further citations and footnote omitted). In *Farrell*, the Connecticut Supreme Court noted that the Restatement does not categorically preclude liability for transactions other than commercial transactions for goods but declined to hold a surgeon liable under an innocent misrepresentation theory for personal injuries received from a pelvic mesh. *See id.* at 419–26. While the Court has concerns about whether an inducement to some action other than a sale or transaction could form the basis of an innocent misrepresentation claim under Connecticut law, the Court presumes that the law is so for purposes of this decision given the absence of any argument by either party on this issue.
[8] Further, to the extent that Plaintiff would argue that these post-loss statements could have induced Plaintiff's purchase of the Masterpiece policy, such arguments are nonsensical. These statements are alleged to have been made after Plaintiff's loss, which itself followed Plaintiff's purchase by eleven months.
[9] Plaintiff's argument that the Court may not dismiss only part of a count is therefore irrelevant. Neither the pre-loss nor post-loss statements support these causes of action.

believes that he can cure the deficiencies identified as to either claim, he may file a motion for leave to amend within 14 days.[10]

### Counts Six & Seven (CUIPA/CUTPA)

In Counts Six and Seven, Plaintiff brings CUTPA claims premised on CUIPA violations. Although CUIPA itself does not provide for a private right of action, "[a] plaintiff may assert a private cause of action based on a substantive violation of CUIPA through CUTPA's enforcement provision." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014) (quotations omitted). "To succeed in such a CUTPA claim, a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Id.* at 165 (citing *McCulloch v. Hartford Life and Accident Ins. Co.*, 363 F. Supp. 2d 169, 181 (D. Conn. 2005)). Count Six alleges a violation of CUIPA, specifically Conn. Gen. Stat. § 33-816(6) which addresses claims settlement practices. Count Seven also alleges a violation of CUIPA, specifically Conn. Gen. Stat. §§ 33-816(1)(A), (1)(E), and (2) which address marketing and advertising practices.

A claim premised upon an insurer's claims settlement practices pursuant to Conn. Gen. Stat. § 38a-816(6), requires a plaintiff to "allege that the 'defendant has committed the alleged wrongful acts with such frequency as to indicate a general business practice.'" *Traylor v. Awwa*, 899 F. Supp. 2d 216, 226 (D. Conn. 2012) (quoting *Quimby v. Kimberly Clark Corp.*, 28 Conn. App. 660, 672, 613 A.2d 838 (1992)); *see also Prucker v. Am. Economy Ins. Co.*, No. CV186013630S, 2019 WL 2880369, at *5–*7 (Conn. Sup. Ct. May 31, 2019) (discussing the pleading standards for a CUIPA-based CUTPA claim in both federal and Connecticut state courts). "[T]he appropriate consideration is whether the plaintiff has made facially plausible factual

---

[10] The Court reiterates that it has not determined whether Fed. R. Civ. P. 9(b) applies to a claim for negligent misrepresentation.

allegations that, *in the circumstances of the particular case*, the defendant has engaged in the alleged wrongful acts enough to suggest it has a general business practice of doing so." *Belz*, 46 F. Supp. 3d at 166 (citations omitted) (emphasis added); *see also New England Systems, Inc. v. Citizens Ins. Co. of Am.*, No. 3:20-cv-01743 (JAM), 2021 WL 1978691, at *4 (D. Conn. May 17, 2021) (indicating that there must be some similarity between the particular plaintiff's case and the other alleged complaints to support a finding of a general business practice which is actionable under a CUIPA/CUTPA claim). "Relevant factors may include: the degree of similarity between the alleged unfair practices in other instances and the practice allegedly harming the plaintiff; the degree of similarity between the insurance policy held by the plaintiff and the policies held by other alleged victims of the defendant's practices; the degree of similarity between claims made under the plaintiff's policy and those made by other alleged victims under their respective policies; and the degree to which the defendant is related to other entities engaging in similar practices." *Belz*, 46 F. Supp. 3d at 166. There is no "magic number" of other similar instances a plaintiff must allege to survive a motion to dismiss on an unfair settlement practices claim, though courts have found that three other similar instances can be sufficient to state a claim. *See id.* at 167 (holding that alleging three other instances of unfair claims settlement practices, in which either the same or similar damage occurred and identical policy language was involved, was sufficient to survive a motion to dismiss); *see also Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 117 (D. Conn. 2014) (same).

Here, Plaintiff has not plausibly alleged that the conduct of which he complains is a general business practice of the Defendant. He does not identify other claims against the Defendant that are substantially similar to his own situation either in terms of the damage sustained or the policy language at issue. The Amended Complaint does allege that—upon information or belief—

approximately four complaints have been filed against the Defendant with the Connecticut Insurance Department and that—also upon information and belief—approximately seven similar claims have been filed against the Defendant with the National Association of Insurance Commissioners. The Amended Complaint further indicates that the Defendant has been sued at least four times for refusing to settle claims similar to Plaintiff's allegations and that "Westlaw reports approximately 5 other cases involving Chubb's Masterpiece policy." However, absent from these statements is any non-conclusory allegation that those instances are factually similar to Plaintiff's situation,[11] and Plaintiff did not directly respond to Defendant's argument concerning this lack of specificity in his opposition.[12] Plaintiff did eventually cite to several specific cases in his sur-reply, but even considering these unalleged cases, as detailed by the Defendant, these cases bear little similarity to the one at bar.[13] In short, Plaintiff has not plausibly alleged that other insureds have been subject to sufficiently similar treatment by the Defendant so as to support the

---

[11] Indeed, at oral argument Plaintiff admitted that the "one thing" in common among those cases and the others reference in the amended complaint is that a plaintiff needed to sue because Defendant refused to cover a loss, *i.e.*, in each case there had been a coverage dispute. This single similarity, present in virtually every coverage dispute which ends up in a court, is not enough to establish that the allegations in the Amended Complaint identify a general business practice

[12] Instead, the gravamen of Plaintiff's argument is that the Amended Complaint meets federal pleading requirements. The Court disagrees. "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. 662 at 678–79.

[13] For example, in one case cited by Plaintiff, the plaintiffs sued the Defendant arguing that the cost to remedy defective exterior staining of the shingles on their home and barn were covered by a homeowner's policy, a situation having nothing to do with water damage in a basement. *See Gargano v. Vigilant Ins. Co.*, 494 F. App'x 98, 99 (1st Cir. 2012). In another, the plaintiff's home was damaged by Hurricane Sandy, and, among other issues, the plaintiff sought to enforce a settlement agreement that was the result of a mediation process involving the New York State Department of Financial Services. *See Perlbinder v. Vigilant Ins. Co.*, 190 A.D.3d 985, 986 (N.Y. App. Ct. 2021). Yet another case involved a windstorm and a commercial business policy rather than a flooded basement and a homeowner's policy, let alone the Masterpiece Policy at issue. *See Colonial Restaurant Supply, LLC v. Travelers Indem. Co. of Am.*, No. CV075009224S, 2007 WL 1893627, at *1 (Conn. Sup. Ct. June 12, 2007). *Nelson v. Vigilant Insurance Company* does not discuss the circumstances, loss, or policy at issue at all. *See* No. 07cv1406, 2007 WL 3334993 (D. Pa. Nov. 9, 2007). *Seven Oaks Partners, LP v. Vigilant Insurance Company*, in which a frozen pipe burst and the insured was subjected to a significant claim settlement process, may be a closer case for comparison. *See* No. FSTCV095012672S, 2010 WL 3038435, at *1 (Conn. Sup. Ct. July 7, 2010). But that case does not contain any information about the type of policy at issue, does not indicate that the insured was subject to multiple requests to inspect the property, and still only involves burst pipes rather than backed up water systems. *Seven Oaks Partners, LP* is, therefore, not sufficient to support a plausible inference that the Defendant has a general business practice of the kind described in the Amended Complaint.

inference of a general business practice and Count Six is dismissed. *See New England Systems, Inc. v. Citizens Ins. Co. of Am.*, 2021 WL 1978691, at *4 (D. Conn. May 17, 2021) ("[P]rior instances of insurance misconduct offered to demonstrate a general business practice must be sufficiently similar to the allegations at issue to support such a conclusion.") (citing *Mazzarella v. Amica Mut. Ins. Co.*, 774 F. App'x 14, 18 (2d Cir. 2019)).

As indicated, Count Seven is premised upon Conn. Gen. Stat. §§ 38a-816(1)(A), (1)(E), and (2), the provisions of CUIPA which address marketing and advertising. They provide, in pertinent part:

> The following are defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:
>
> > (1) Misrepresentations and false advertising of insurance policies. Making, issuing or circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement, sales presentation, omission or comparison which: (A) Misrepresents the benefits, advantages, conditions or terms of any insurance policy . . . (E) uses any name or title of any insurance policy or class of insurance policies misrepresenting the true nature thereof . . . .
> >
> > (2) False information and advertising generally. Making, publishing, disseminating, circulating or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading.

Conn. Gen. Stat. §§ 38a-816(1)–(2). "Section 38a–816(1) prohibits misrepresentations and false advertising of insurance policies. Section 38a–816(2) prohibits false information and advertising generally." *Heyman Associates No. 1 v. Insurance Co. of State of Pa.*, 231 Conn. 756, 794 (1995).

18

Plaintiff alleges that the Defendant's advertising practices run afoul of Conn. Gen. Stat. §§ 38a-816(1)(A) & (2) and that naming the insurance policy a "Masterpiece" policy runs afoul of Conn. Gen. Stat. § 38a-816(1)(E). In seeking dismissal of this count, Defendant asserts that (1) Plaintiff has not specified which benefit, advantage, condition, or term of the Masterpiece policy was misrepresented; (2) Plaintiff has not identified the specific advertisement, announcement, or statement nor the assertion, representation, or statement contained therein which is allegedly untrue, deceptive or misleading; and (3) Plaintiff has failed to allege that the name of the policy at issue— "Masterpiece Homeowners Insurance Deluxe House Coverage" policy—is itself deceptive or that the policy does not offer homeowner's insurance coverage as its name indicates. In response, Plaintiff cites to cases analyzing the contours of CUTPA in contexts other than CUIPA and based thereon asserts that his Amended Complaint contains sufficient allegations to demonstrate that Defendant's representations were unfair or deceptive under CUIPA. Plaintiff conflates his augments concerning his allegation of a Conn. Gen. Stat. § 38a-816(1)(A) violation with his allegations pursuant to § 38a-816(2).[14]

The Court agrees with the Defendant. First, Plaintiff has failed to allege which benefit, advantage, condition, or term of the Masterpiece Policy that Defendant misrepresented or falsely advertised or how the Defendant has actually misrepresented that specific policy benefit or provision directly or through a false advertisement. The need to identify a specific policy benefit or provision is manifest under the plain language of the statute. Connecticut General Statutes § 38a-816(1)(A) prohibits the misrepresentation of "the benefits, advantages, conditions or terms of

---

[14] This conflation is notable because Connecticut courts have applied common law misrepresentation standards to claims pursuant to Conn. Gen. Stat. § 38a-816(1). *See Lee v. AIG Cas. Co.*, 919 F. Supp. 2d 219, 234 (D. Conn. 2013) (citing *Nazami v. Patrons Mutual Ins. Co.*, 280 Conn. 613, 625 (2006) and *Western World Ins. Co. v. Architectural Builders of Westport, LLC*, 520 F. Supp. 2d 408, 411 (D. Conn. 2007)). Nevertheless, the Defendant advances no argument concerning these standards, and the Court's decision rests only on the arguments presented.

any insurance policy." The statute is specific to the policy at issue and so the provisions of the policy which were misrepresented or falsely advertised must be fairly and specifically described. Similarly, the language of Conn. Gen. Stat. § 38a-816(2) reflects that the Plaintiff must plead more than general allegations of false advertising, which is all that is alleged in the Amended Complaint. Plaintiff did not allege which advertisements and which representations within those advertisements might be misleading. As to Plaintiff's claim pursuant to Conn. Gen. Stat. § 38a-816(1)(E)—that naming the policy at issue a "masterpiece" misrepresents that policy—the Court is not persuaded that the mere inclusion of the word "masterpiece" in the policy name could plausibly render the name misleading. A consumer of insurance can hardly be said to be shopping for a product akin to Michelangelo's *David*, as Plaintiff asserts. And Plaintiff has not alleged that the policy at issue is anything other than a homeowner's insurance policy, which is exactly what the name of the policy—the "Masterpiece Homeowners Insurance Deluxe House Coverage" policy—implies. Count Seven is dismissed.

**Conclusion**

For the forgoing reasons, Counts Three, Six, and Seven are dismissed with prejudice. Counts Four and Five are dismissed without prejudice. Plaintiff may file a motion for leave to amend the complaint by April 5, 2022 if he believes he can cure the deficiencies identified herein.

**SO ORDERED** at Bridgeport, Connecticut, this 22d day of March 2022.

 /s/ Kari A. Dooley
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE